UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHEM, INC.,

                  Plaintiff,

– against –

EXPRESS SCRIPTS, INC.,

                  Defendant.

**OPINION AND ORDER**

16 Civ. 2048 (ER)

Ramos, D.J.:

Plaintiff Anthem, Inc. ("Anthem") brings this motion to dismiss two of the six counterclaims asserted by defendant Express Scripts, Inc. ("ESI"). For the reasons set forth below, Plaintiff's motion is GRANTED.

## I. BACKGROUND[1]

### A. The Parties

Defendant Express Scripts is a leading provider of pharmacy benefit services in the United States and manages prescription drug plans for health insurers, self-funded employers, the public sector, and government clients. Doc. 3 ("Complaint") ¶ 1; Answer and Amended Counterclaims ("AAC") (Doc. 33) ¶¶ 1, 22. Anthem, one of the largest health benefits companies in the United States, is a client of Express Scripts. *Id.*

---

[1] The following facts are based on the allegations in the Amended Answer and Counterclaims, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Hilfiger v. Bradlees, Inc.*, No. 99 Civ. 4677 (WK), 2002 WL 737477, at *2 (S.D.N.Y. Apr. 25, 2002).

**B. The Pharmacy Benefit Management Agreement**

On December 1, 2009, the parties entered into a pharmacy benefit management agreement ("PBM Agreement" or "Agreement") pursuant to which ESI acts as Anthem's exclusive provider of pharmacy benefit management services for Anthem-administered health insurance plans for a ten year period from 2009 to 2019.  AAC ¶¶ 1, 149–50; Declaration of Glenn M. Kurtz (Doc. 41), Ex. 1 ("PBM Agreement").[2]

Section 5.6 of the PBM Agreement, titled "Periodic Pricing Review," provides an avenue for Anthem to renegotiate pricing every three years.  *Id.* at 61 ("Section 5.6").  Section 5.6 states in full:

> **5.6 Periodic Pricing Review**.  *[Anthem] or a third party consultant retained by [Anthem] will conduct a market analysis every three (3) years during the Term of this Agreement to ensure that [Anthem] is receiving competitive benchmark pricing*.  In the event [Anthem] or its third party consultant determines that such pricing terms are not competitive, [Anthem] shall have the ability to propose renegotiated pricing terms to [ESI] and [Anthem] and [ESI] agrees [sic] to negotiate in good faith over the proposed new pricing terms.  *Notwithstanding the foregoing, to be effective any new pricing terms must be agreed to by [ESI] in writing*.

*Id.* at 61 (emphasis added).

The Parties also agreed to a full integration clause in the PBM Agreement, which provides as follows:

> **16.1 Entire Agreement**.  This Agreement and all Exhibits, and other documents furnished pursuant to this Agreement and expressly made a part hereof … shall constitute the entire agreement relating to the subject matter hereof between the Parties hereto, and prospectively, as of the Amendment Effective Date, supersedes all other agreements, written or otherwise (including, without limitation, the Original Agreement).

PBM Agreement at 93.

---

[2] The Agreement was amended on January 1, 2012 as a result of the parties' first pricing renegotiations, discussed *infra*.  *See* Compl. ¶ 17.  For purposes of this motion, both parties refer only to the Amended Restated Pharmacy Benefit Management Services Agreement, Doc. 41-1.

2

### C. The NextRx Agreement

Also on December 1, 2009, ESI purchased from Anthem three operating pharmacy benefit management companies for $4.675 billion: NextRx, LLC, an Ohio limited liability company, NextRx, Inc., a Delaware corporation, and NextRx Services, Inc., a New York corporation. Declaration of Glenn M. Kurtz (Doc. 41), Ex. 2 ("NextRx Agreement") at 1; *see also* AAC ¶¶ 2, 163.

The preamble to the NextRx Agreement discusses how the two transactions between the parties are related. Specifically, the preamble notes that the parties had already negotiated and agreed to the terms of the PBM Agreement—which was attached as an exhibit to the NextRx Agreement—and that the PBM Agreement was to be entered into upon the closing of the NextRx Agreement:

> WHEREAS, at the Closing, the Parties shall enter into that certain Pharmacy Benefit Management Services Agreement in the form of Exhibit A, with only such changes as are mutually agreed to by Purchaser and Seller (the "PBM Contract")…

NextRx Agreement at 7. The NextRx Agreement further required each party to deliver an executed PBM Agreement at closing, *id.* §§ 2.4(b)(iv), (c)(iii), and provided that neither party's obligations under the NextRx Agreement were effective until delivery of the executed PBM Agreement. *Id.* § 6.2(c); *see also id.* § 6.3(c) (establishing the same precondition for seller's obligations); AAC ¶ 167.

The NextRx Agreement—like the PBM Agreement—also contains an integration clause, which provides:

> **Section 10.4 Entire Agreement.** This Agreement (including the Seller Disclosure Letter, the Purchaser Disclosure Letter and the Exhibits hereto) constitutes the entire understanding of the Parties with respect to the subject matter contained herein and supersedes all prior agreements and understandings, oral and written, with respect thereto, other than the Confidentiality Agreement.

NextRx Agreement at 96.

The $4.675 billion purchase price under the NextRx Agreement and the pricing for ESI's services specified in the PBM Agreement were negotiated simultaneously. AAC ¶¶ 2, 165–68. When the parties negotiated the transactions, they considered a range of options for structuring payment. At one end of the spectrum, ESI would pay less money for the NextRx companies upfront but offer lower pricing for its services over the ten year life of the PBM Agreement. *Id.* ¶ 165. At the other end of the spectrum, ESI would pay the entire purchase price of $4.675 billion upfront, but would charge higher pricing for its services over the ten year life of the PBM Agreement. *Id.* Anthem ultimately chose to receive the $4.675 billion purchase price upfront, with the understanding that it would pay more for ESI's services over the ten year term of the PBM Agreement. *Id.* ¶¶ 165–66.[3]

### D. Repricing Negotiations

On October 17, 2014, Anthem proposed new pricing terms pursuant to which it would pay approximately $13 billion less over the course of the remainder of the PBM Agreement, and made a similar proposal on March 18, 2015. *Id.* ¶ 185. While Anthem's right to propose revised terms under Section 5.6 did not ripen until December 2015—the end of the second 3-year period under the PBM Agreement—ESI nevertheless negotiated with Anthem regarding its proposal. *Id.* ¶¶ 6, 9, 185. During the course of those negotiations, ESI requested, but Anthem refused to provide, the data it used to support these proposed pricing concessions. *Id.* ¶ 187. Ultimately, ESI did not agree to Anthem's proposal. ESI asserts that although it was under no obligation to do so, it made five separate pricing counterproposals to Anthem between June 2015 and March 2016, but in each instance, Anthem rejected the proposals. *Id.* ¶ 197.

---

[3] The history of these negotiations, or the reasons the parties ultimately determined to structure the transactions as they did, are not expressly made part of the Agreements.

## II. PROCEDURAL HISTORY

On March 21, 2016, Anthem filed the instant suit, alleging, *inter alia*, that ESI breached the PBM Agreement by failing to negotiate the pricing terms in good faith as required by the terms of the PBM Agreement. *See* Complaint. Anthem seeks approximately $15 billion in damages and declaratory relief that would allow it to terminate its contract with ESI. *Id.* ¶¶ 3, 11–51, 89–126.[4]

On April 19, 2016, ESI filed its Answer and Counterclaims, Doc. 18, and on June 13, 2016, it filed its Answer and Amended Counterclaims. Doc. 33. ESI asserts six counterclaims, including, as relevant here: (i) that Anthem breached the express requirement in Section 5.6 that it negotiate in good faith over any new pricing proposal (AAC ¶¶ 204–10) ("Count I"); (ii) that Anthem breached the implied covenant of good faith and fair dealing in the PBM Agreement (*id.* ¶¶ 211–18) ("Count II"); and (iii) a claim for unjust enrichment for Anthem's refusal, despite accepting the $4.675 billion upfront purchase price for the three NextRx companies, to provide the consideration promised in return (*id.* ¶¶ 255–60) ("Count VI"). Anthem seeks to dismiss the counterclaims for implied covenant of good faith and fair dealing and unjust enrichment. *See* Memorandum of Law in Support of Anthem's Motion to Dismiss (Doc. 40) ("Pl.'s Mem. L.").[5]

## III. LEGAL STANDARDS FOR A MOTION TO DISMISS A COUNTERCLAIM

The applicable standard for a motion to dismiss a claim pursuant to Rule 12(b)(6) also applies to a motion to dismiss a counterclaim pursuant to Rule 12(b)(6). *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008); *Revonate Mfg., LLC v. Acer*

---

[4] Anthem also alleges numerous operational breaches by ESI. *Id.* ¶¶ 6, 52–88, 101–07. These breaches are not relevant for purposes of the instant motion.

[5] Four of the six Counterclaims (Counts 1, 3, 4 and 5) are for breach of contract and seek damages and declaratory relief.

*Am. Corp.*, No. 12 Civ. 6017 (KBF), 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations alleged as true and draw all reasonable inferences in the non-moving party's favor.  *Goldstein v. Pataki*, 516 F.3d 50, 53 (2d Cir. 2008).  However, the court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.").

## IV.   DISCUSSION

The parties dispute whether pursuant to Section 5.6 ESI has an obligation to agree to Anthem's proposed pricing terms or to ensure that Anthem is receiving "competitive benchmark pricing."  Anthem argues that it does under the plain language of Section 5.6.  Pl.'s Mem. L. at 16 ("Section 5.6 …obligates ESI to negotiate in good faith every 3 years "to ensure that [Anthem] is receiving competitive benchmark pricing.").  However, ESI points to several factors that it asserts contradict Anthem's current position.  First, ESI argues that under the "reasonable and ordinary meaning" of Section 5.6, Anthem's position is untenable and amounts to a wholesale rewrite of Section 5.6.  Memorandum of Law in Support of Express Scripts' Opposition to Anthem's Motion to Dismiss Counterclaims Two and Six (Doc. 44) ("Def.'s Mem. L.") at 12–13.  Second, ESI avers that Anthem has acknowledged the accuracy of ESI's interpretation through past statements and conduct.  *Id.* at 12.  For example, during the first pricing review conducted in 2013, Anthem at no time suggested that ESI had a contractual

obligation to "provide [Anthem] with competitive benchmark pricing." AAC ¶ 174. Moreover, in November 2014, Anthem's General Counsel acknowledged that ESI has the right under the Agreement not to agree to Anthem's proposed pricing. *Id.* ¶ 182. And in August 2014, Anthem's President of its Pharmacy Division, Brian Griffin, e-mailed ESI seeking to revise the last sentence of Section 5.6—which requires that ESI agree to any new pricing terms in writing—so pricing changes would be "[b]ased on external validation not ESI approval." *Id.* ¶¶ 174, 182.

ESI acknowledges that Section 5.6 gives Anthem the right to conduct a market analysis every three years to determine whether Anthem is receiving "competitive benchmark pricing." Def.'s Mem. L. at 11–12. If Anthem determines that it is not receiving "competitive benchmark pricing," then it has the ability to propose amended pricing terms. *Id.* However, while Section 5.6 requires that ESI negotiate Anthem's proposals in good faith, it argues that Section 5.6 does *not* require it to accept whatever "outrageous demand" Anthem may make. *Id.* (citing authority for the proposition that a party does not act in bad faith merely because it reaches an impasse or refuses to capitulate to the other side's demands).

ESI further alleges that Anthem agreed to pay "higher prices for ESI's services during the life of the PBM Agreement" in exchange for receiving the $4.675 billion purchase price up front. AAC ¶¶ 3, 150, 214; *see also* Def.'s Mem. L. at 17 ("ESI merely alleges that Anthem must recognize that it *agreed* to pay higher pricing in exchange for an upfront payment of $4.675 billion, which would inform the pricing Anthem could expect to receive from ESI for the duration of the PBM Agreement."); *id.* at 1 (the PBM and NextRx Agreements are "interdependent contracts, through which the upfront price paid by ESI for NextRx was inextricably linked to the long-term pricing paid by Anthem for ESI's PBM services.") Anthem

disputes that it accepted the $4.675 billion payment in exchange for higher prices over the life of the PBM agreement. Pl.'s Mem. L. at 7–8.

### a. Implied Covenant of Good Faith and Fair Dealing

Anthem contends that the counterclaim for breach of implied covenant must be dismissed because New York law bars such claims when they are insufficiently distinct from contractual claims. Pl.'s Mem. L. at 9;[6] *see also Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also plead."); *accord Mill Fin., LLC v. Gillett*, 122 A.D.3d 98, 99, 992 N.Y.S.2d 20, 21 (App. Div. 2014) ("While the conduct alleged in the causes of action for breach of the covenant of good faith and fair dealing need not be identical in every respect, it was enough that they arose from the same operative facts as the breach of contract claim in order to result in their dismissal."); *see also Deutsche Bank Nat. Trust Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 97 F. Supp. 3d 548, 557 (S.D.N.Y. 2015) ("[A] breach of that duty will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate claim for breach of covenant of an express provision of the underlying contract."). "Instead, an alleged breach of the implied covenant of good faith and fair dealing is part of a general breach of contract claim." *Reed v. Delta Airlines, Inc.*, No. 10 Civ. 1053 (JGK), 2011 WL 1085338, at *5 (S.D.N.Y. Mar. 23, 2011) (dismissing counterclaim as duplicative of the breach of contract claim).

---

[6] Anthem also argues the claim should be dismissed because it contradicts the express terms of Section 5.6 of the PBM Agreement and because it is barred by the integration clauses within the PBM and NextRx Agreements. *See generally* Pl.'s Mem. L. The Court does not address Anthem's additional arguments for dismissal of this counterclaim because it finds the basis addressed herein is dispositive for purposes of the motion to dismiss.

Here, ESI bases its claim for breach of the covenant on precisely the same factual allegations as its breach of contract claim. Section 5.6 of the PBM Agreement expressly requires the parties to negotiate in "good faith" to determine pricing adjustments, and thus the parties' obligations and rights are expressly governed by contract. *See* AAC ¶ 209 ("Anthem has breached its obligations under Section 5.6 of the PBM Agreement by failing to negotiate in good faith with ESI regarding Anthem's proposed new pricing terms."). ESI then alleges that Anthem is also liable for breach of the implied covenant based on the same alleged failure to negotiate in good faith for pricing. *Id.* ¶¶ 214–215. Although ESI amended its Counterclaims to allege that Anthem also breached the implied covenant "in numerous ways by continually refusing to recognize the tradeoff that Anthem accepted in 2009 between upfront cash and pricing for ESI's services," *id.* ¶ 155, these additional allegations are also redundant of ESI's breach of contract claim for failure to negotiate in good faith under Section 5.6.

ESI's breach of the implied covenant claim thus arises from the same operative facts and predicate conduct as its breach of conduct claim, and it seeks the same damages. *See DOLP 1133 Props. II LLC v Amazon Corporate, LLC*, 2015 N.Y. Misc. LEXIS 3019 at *16, 2015 NY Slip Op. 31544 (U) (N.Y. Sup. Ct. Aug. 17, 2015) ("Though [plaintiff] does allege that [defendant] acted in bad faith, Section 28 expressly obligates the parties to negotiate in good faith….Hence, if [defendant] failed to do so, it expressly breached the [Agreement.] A separate claim for breach of the implied covenant of good faith and fair dealing is duplicative."). The Court therefore GRANTS Anthem's motion to dismiss ESI's claim for breach of the covenant as duplicative of ESI's breach of contract claim.[7]

---

[7] ESI argues that "Anthem's motion must be denied unless Anthem is able to convince the Court both that (1) ESI's interpretation of the contracts strains the contract language beyond its reasonable and ordinary meaning, and (2) Anthem's proffered interpretation reflects the one reasonable interpretation of the contracts." Def.'s Mem. L. at 2. The Court disagrees. It is not necessary for the Court to determine whether Anthem's interpretation of the contracts

### b. Unjust Enrichment

ESI argues that Anthem, having reaped the benefit of the upfront payment of the entire purchase price of the NextRx companies, now seeks to deny the link between the two transactions to assert entitlement to "competitive benchmark pricing" under the PBM Agreement. Def.'s Mem. L. at 19. ESI's counterclaim thus alleges that Anthem would be unjustly enriched if it were permitted to pay less for ESI's services. In other words, ESI claims that the pricing trade-off between the PBM and NextRX Agreements was a central component of the broader transaction and the two Agreements have to be read together. *Id.* Anthem argues that ESI's unjust enrichment counterclaim should be dismissed because it also is duplicative of ESI's breach of contract counterclaim and, on the facts of this case, cannot be plead in the alternative. Pl.'s Mem. L. at 13–15.[8]

"[W]here there is an enforceable written contract governing the particular subject matter, claims based on quasi-contract theories like unjust enrichment do not provide a distinct basis for recovery." *Vitrano v. State Farm Ins. Co.*, No. 08 Civ. 00103 (JGK), 2008 WL 2696156, at *3 (S.D.N.Y. July 8, 2008); *see also Spanierman Gallery, PSP v. Love*, No. 03 Civ. 3188 (VM), 2003 WL 22480055, at *4 (S.D.N.Y. Oct. 31, 2003) ("The New York Court of Appeals has held that the 'existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject

---

is reasonable. A plain reading of the contracts and the AAC is all that is necessary to determine whether a counterclaim for breach of the covenant of good faith is duplicative of the contract claims.

[8] Anthem also argues the claim should be dismissed for the additional reasons that: (i) it contradicts the express terms of the PBM and NextRx Agreements and is barred by the integration clauses within each; (ii) ESI fails to state a claim; and (iii) the claim is barred by the statute of limitations. *See generally* Pl.'s Mem. L. The Court does not address Anthem's additional arguments for dismissal of the unjust enrichment claim because it finds the basis addressed above is dispositive for purposes of the motion to dismiss.

matter.'" (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190, 193 (1987))).

It is true that as a preliminary matter "[a]t the pleading stage, [a party] is not required to guess whether it will be successful on its contract ... or quasi-contract claims." *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010); *see also Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770 (SAS), 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2003) (noting that plaintiff is allowed to plead both contract and quasi-contract claims even though he may only recover on one such ground); *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04 Civ. 2867 (BSJ) (HBP), 2006 WL 6217754, at *7 (S.D.N.Y. Mar. 31, 2006) (observing that the argument that quasi-contract claim was barred as duplicative of contract claim was "misguided at the pleading stage"). However, where, as here, "both parties agree that a valid and enforceable contract exists between them, [a party] may not plead the quasi-contractual theory of unjust enrichment." *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000). That is, where an express contract is conceded, a party may not proceed also on a quasi-contract theory "because it is foreclosed by the very existence of the express contract." *Arthur Properties, S.A. v. ABA Gallery, Inc.*, No. 11 Civ. 4409 (LAK), 2011 WL 5910192, at *4 (S.D.N.Y. Nov. 28, 2011) (dismissing unjust enrichment claim); *see also Fishman v. Philadelphia Fin. Life Assurance Co.*, No. 11 Civ. 1283 (TPG), 2016 WL 2347921, at *13 (S.D.N.Y. May 3, 2016) ("[A] claim for unjust enrichment may only survive as an alternative theory of liability when the existence of the contract is in dispute.").

Here, both parties assert the PBM Agreement is valid and enforceable and agree that the pricing dispute at issue is governed by the express terms of the PBM Agreement. *See* Complaint

¶¶ 89–97 (alleging that "[t]he Agreement is a valid, binding, and enforceable contract" and that [ESI] breached Section 5.6 of the PBM Agreement); ACC ¶¶ 204–08 (alleging that "[t]he PBM Agreement is a valid and enforceable contract" and asserting a counterclaim for breach of Section 5.6 of the PBM Agreement). Notably, ESI admits that the unjust enrichment claim is premised on a favorable ruling regarding its interpretation of the PBM Agreement. AAC ¶ 257 ("Anthem [] denies that the $4.675 billion payment constitutes consideration for the PBM Agreement, and for the right it provides ESI to charge Anthem higher pricing. Under such circumstances, it would be unjust for Anthem to retain the $4.675 billion.").

Therefore, ESI is precluded from also asserting a counterclaim for unjust enrichment.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Dismiss Counterclaims II and VI is GRANTED with prejudice.

The Clerk of the Court is respectfully directed to terminate the Motion, Doc. 39.

It is SO ORDERED.

Dated:   March 23, 2017
         New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.