UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHEM, INC.,

                                  Plaintiff,

            – against –

EXPRESS SCRIPTS, INC.,

                                  Defendant.

**OPINION & ORDER**

16-cv-2048 (ER)

Ramos, D.J.:

      Anthem, Inc. brought this action against Express Scripts, Inc., in March 2016 for breach of contract and declaratory judgment.  Doc. 3.  Anthem's claims stemmed from a deal whereby Express Scripts acquired NextRx and agreed to serve as the pharmacy benefit manager ("PBM") for Anthem.  *Id.*  Anthem alleged that Express Scripts breached the parties' agreement by refusing to negotiate over pricing and by failing to meet its operational obligations.  *Id.* ¶¶ 89–97, 101–107.  It further sought declaratory judgment in regard to Express Scripts' obligations as to negotiations, pricing, termination of the agreement, and post-termination services.  *Id.* ¶¶ 98–100, 108–121, 122–126.  Express Scripts brought counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing, declaratory judgment, and unjust enrichment.  *See* Doc. 33 ¶¶ 204–260.

      The Court has previously issued two opinions addressing the parties' various pre-trial motions.  In March 2017, the Court granted Anthem's motion to dismiss two of Express Scripts counterclaims, namely, its counterclaims for breach of implied covenant and unjust enrichment.  *See Anthem, Inc. v. Express Scripts, Inc.*, 16 Civ. 2048 (ER), 2017 WL 1134765 (S.D.N.Y. Mar. 23, 2017) ("*Anthem I*").  And in March 2022, the Court granted in part and denied in part Express Scripts' motion for partial summary judgment.  Specifically, the Court granted Express Scripts summary judgment as to Anthem's claim

for breach of contract for good faith negotiations, Express Scripts' third counterclaim seeking a declaration as to those negotiations, and parts of Anthem's claim for operational breaches.  *See Anthem, Inc. v. Express Scripts, Inc.*, 16 Civ. 2048 (ER), 2022 WL 1558879 (S.D.N.Y. Mar. 31, 2022) ("*Anthem II*").

Before the Court are:  (1) Express Scripts' motion for partial summary judgment as to Anthem's breach of contract claim, namely, its "Super PA" operational breach allegations under Section 3.7 of the parties' agreement, Doc. 406; (2) Express Scripts' motion to preclude expert testimony, Doc. 410; and (3) Anthem's cross-motion for leave to file a supplemental expert report on damages, Doc. 429.  For the reasons set forth below, Express Scripts' partial motion for summary judgment is GRANTED.  Express Scripts' motion to preclude expert testimony is GRANTED in part and DENIED in part, and Anthem's motion for leave to file a supplemental expert report is GRANTED.

## I.      BACKGROUND

### A.  Factual Background

The facts underlying this action are discussed in detail in the Court's March 2017 Opinion and Order granting Anthem's motion to dismiss, *see Anthem I*, 2017 WL 1134765, and its March 2022 Opinion and Order granting in part and denying in part Express Scripts' partial motion for summary judgment, *see Anthem II*, 2022 WL 1558879. The Court discusses only the facts relevant to the resolution of the motions now before it.

Anthem is a health care plan provider.  Doc. 355 at 11.  Express Scripts provides PBM services by serving as an intermediary between health plans and pharmacies.  *Id.* at 12.  Once a plan member fills a prescription at a pharmacy and pays a copay, the PBM reimburses the pharmacy for the remaining cost of the prescription.  *Id.*  The health plan––Anthem, in this case—then reimburses the PBM—here, Express Scripts—at a contractually agreed amount, which may exceed the PBM's payment to a pharmacy, thereby generating profit for the PBM.  *Id.*

In April of 2009, the parties entered into a deal whereby Express Scripts purchased NextRx—Anthem's then-PBM that was struggling to perform and compete with other larger PBMs—for $4.675 billion and became Anthem's exclusive PBM for ten years, from 2009 to 2019.  Doc. 355 at 12; Doc. 381-225; *see also* Doc. 357 ¶¶ 10–11.  In light of Express Scripts' large upfront payment, Anthem agreed to prescription pricing terms that were more favorable than those previously paid to NextRx, but "still short of market competitiveness."  Doc. 365-14 at 2.  Anthem did so "knowingly," "trad[ing] discounts versus the one-time payment."  *Id.*  The agreement provided that Anthem had the ability to propose renegotiated pricing terms to Express Scripts every three years, and the parties agreed to negotiate over the proposed pricing terms in good faith.  Doc. 381-2 at 62 § 5.6.

The lengthy agreement also contained a variety of additional provisions imposing duties and responsibilities on both parties, *see* Doc. 381-2 at 17–100 §§ 2–16; *see also Anthem II*, 2022 WL 1558879, at *2–4, and it specifically placed upon Express Scripts various performance, accuracy, and pricing duties, Doc. 3 ¶ 13; *see also* Doc. 381-2 at 24–56 §§ 3–4.  For example, as part of the contract, Express Scripts agreed to process Anthem's prior authorization ("PA") requests.  *Anthem II*, 2022 WL 1558879, at *3.  The agreement specified "performance guarantees" that Express Scripts was required to meet in delivering this service, which set benchmarks for the issuance of accurate PA determinations as well as corresponding penalties for any failure to do so.[1]  Doc. 359-1 at 136, 184.  The agreement further required Express Scripts to "provide the administrative services . . . in a prudent and expert manner in accordance with this Agreement and all Laws."  Doc. 381-2 at 24 § 3.1(a).

---

[1] As the Court noted in *Anthem II*, these guarantees "set required percentages for issuing correct determinations and contain corresponding penalties" for failure to meet those percentages.  *Anthem II*, 2022 WL 1558879, at *3.  "There are separate performance guarantees for different categories of prior authorizations, including for non-specialty medications, specialty medications, and for Medicaid recipients . . . ."  *Id.*

The ten-year agreement did not play out as planned.  Between 2014 and 2016, the parties were unsuccessful in re-negotiating pricing terms pursuant to Section 5.6 of the agreement, which led Anthem to file this lawsuit.  *See Anthem II*, 2022 WL 1558879, at *2.  Additionally, as relevant here, Anthem claims that Express Scripts breached the agreement between 2013 and 2015 by incorrectly approving and paying claims not eligible for payment because of a software design error in the so-called Super PA, Express Scripts' claim processing system—a malfunction which allegedly "overrode required prior authorization ('PA') criteria to approve claims that should have been rejected."[2]  Doc. 443 at 7.  This error allegedly caused Anthem to pay for incorrectly-approved claims—claims which were not actually eligible for payment—amounting to millions of dollars in damages.  Doc. 443 at 7–8, 11, 16–18 (internal citations omitted); Doc. 3 ¶ 79.

The parties disagree about which sections of the agreement govern these issues, which make part of Anthem's operational breach allegations:  while Anthem's briefing argues that that "[t]he Super PA breaches Sections 3.1, 3.7, and 3.11 of the Agreement," Doc. 443 at 7, Express Scripts contends that, as per Anthem's complaint, only Sections 3.1 and 3.11 address Super PA failures.  Doc. 437 at 6 (citing Doc. 3 ¶¶ 6, 52, 54 n.6).[3]

Section 3.7 of the agreement, in relevant part, reads as follows:

3.7 Claims Processing Services.

[ . . . ]

(e)  [Express Scripts] shall process Claims under this Agreement in accordance with the terms hereof.

---

[2] As Express Scripts underscores, the Court's March 2022 opinion did not address Anthem's Super PA allegations because Express Scripts did not seek summary judgment on that issue.  Doc. 407 at 4 n.1 (citing Doc. 373 at 46 n. 5 ("Express Scripts also disputes Anthem's Super PA allegations, but those allegations involve disputed factual issues and expert testimony not properly addressed at summary judgment.")); *see also* Doc. 443 at 15 n.3, 19.

[3] One of Express Scripts' central arguments is that Anthem failed to plead the Super PA claim as a breach of Section 3.7 of the agreement until "this late stage" in the litigation.  Doc. 407 at 8; *see also* Doc. 437 at 4–9.

(f) [Express Scripts] will perform electronic, telephone, and on-site audits of Network Pharmacies to determine compliance with their pharmacy agreements. [Express Scripts] will attempt recovery of identified overpayments to Network Pharmacies through offset, demand or other reasonable means; provided that [Express Scripts] will not be required to institute litigation. Recovered overpayments shall be credited to [Anthem].

(g) If [Express Scripts] determines that, through its error (e.g., [Express Scripts] processed eligibility incorrectly or incorrectly set up benefit design), it has paid any Covered Individual on a manually submitted Claim less than the Covered Individual is entitled to under the Coverage Document, [Express Scripts] shall adjust the underpayment consistent with its standard policies. If [Express Scripts] determines that, through its error, it has overpaid any Network Pharmacy or paid benefits not covered under the terms of a Coverage Document, [Express Scripts] shall, at its own expense, recover the overpayment or incorrect payment and credit [Anthem] accordingly. In addition, [Express Scripts] also performs electronic, telephone, and onsite audits of Network Pharmacies. [Express Scripts] will attempt recovery of identified overpayments through offset, demand or other reasonable means; provided that [Express Scripts] will not be required to institute litigation. One hundred percent (100%) of recovered overpayments for [Anthem]'s Commercial, Medicaid, and Medicare Advantage/Medicare Part D business shall be credited to [Anthem] and fees in the amount of 20% of such recoveries will be billed for [Anthem]'s Commercial and Medicaid business; however, [Anthem] shall not be billed for any fees for its Medicare Advantage and Medicare Part D business.

Doc. 381-2 at 38–39 § 3.7(e)–(g).

As the parties both emphasize, the Court previously noted in *Anthem II* that, "the plain language of [Section 3.7(g)] clearly requires [Express Scripts] to credit back to Anthem 100% of *recovered overpayments*." *Anthem II*, 2022 WL 1558879, at *13 (emphasis added). The Court noted, however, that Anthem had "not shown entitlement to *unrecovered* overpayments. Therefore, its claim would appear to be limited to credit for overpayments that Express Scripts recovered after identifying the overpayments through the audits required by Section 3.7." *Id.* at *14 (emphasis in original); *see also* Doc. 407 at 5; Doc. 443 at 8; Doc. 437 at 5, 6, 12.

**B. Procedural History**

Anthem filed the instant suit on March 21, 2016. Doc. 3. Express Scripts filed its answer and counterclaims on April 19, 2016. Doc. 18. Several months later, on June 13, 2016, Express Scripts filed an amended answer and amended counterclaims. Doc. 33.

Anthem subsequently filed a motion to dismiss two of Express Scripts counterclaims, Counts II and VI.  Doc. 39.  The Court granted the motion on March 23, 2017.  *Anthem I*, 2017 WL 1134765, at *6.  Thereafter, the Court held various discovery and pre-trial conferences between 2017 and 2021.  *See, e.g.*, Doc. 91; Doc. 105; Min. Entry dated Aug. 21, 2018; Min. Entry dated May 14, 2019; Doc. 236; Doc. 239; Doc. 269; Doc. 297; Min. Entry dated Dec. 16, 2020; Doc. 326; Min. Entry dated Apr. 16, 2021.

As is relevant to the motions now before the Court, Anthem produced expert reports and/or depositions for six prior authorization experts, namely:  Jacob Abarca, Andrea Foulkes, Michael Lonergan, Amy Matthews, Brian McCormick, and Arthur Shinn.  *See, e.g.*, Doc. 433-2 (Abernathy expert report); Doc. 433-3 (Foulkes declaration); Doc. 433-6 (Foulkes expert report); Doc. 433-21 (Foulkes deposition); *see also* Doc. 414-1 (excerpts of Matthews deposition); Doc. 414-3 (excerpts of Foulkes deposition); Doc. 414-4 (excerpts of Abarca deposition) Doc. 414-5 (excerpts of Shinn deposition).  Those experts provided opinions regarding various portions of the PBM agreement and the claims at issue in this case, including auditing, PAs, Super PA, damages, and statistics.[4]  Doc. 412 at 11–12.  Express Scripts produced rebuttal expert testimony, *see, e.g.*, Doc. 433-2, which considered and provided responses to the expert reports produced by Anthem, *see, e.g., id.* ¶¶ 147–151.[5]

---

[4] As is relevant to the motions now before the Court, the experts also provided opinions regarding—and based upon— the "Sentinel Effect," which evaluates how Anthem's PA requirements affect patient behavior.  *See generally* Doc. 361-9.  Specifically, the Sentinel Effect measures "what happens when a prescription triggers a reject."  Doc. 361-17 at 11–12; *see also* Doc. 412 at 13 ("Mr. Abarca opined about the so-called 'Sentinel Effect,' which purportedly measures how successfully Anthem's PA requirements cause patients to forgo prescription drug treatment or accept a cheaper alternative drug.").  In other words, the effect tracks "the phenomenon" whereby a member walks away from a prescription that is rejected without "taking any steps to address the rejection."  Doc. 381-148 at 7 n.9.

[5] Among other things, the parties dispute the extent to which Express Scripts' expert, Mark Abernathy, agreed with the application of the Sentinel Effect within the expert opinions that Express Scripts seeks to exclude.  *Compare* Doc. 445 at 14 ("Mr. Abernathy, however, explains that [his] purported criticism of the Sentinel Effect *does not* apply to calculation of damages for the Super PA Claim . . . .") (emphasis in original) *with* Doc. 438 at 6 ("As is apparent from the statement by Mr. Abernathy that Anthem quotes in its

On July 19, 2021, the parties jointly stipulated to the partial dismissal of various claims. Doc. 347. Specifically, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, the parties voluntarily dismissed without prejudice Counts IV and V of Anthem's complaint and Count V of Express Scripts' counterclaims.[6] *Id.* at 1–2. Express Scripts then filed a motion for partial summary judgment as to Counts I, II, and III of Anthem's claims and Count III of its counterclaims on August 27, 2021. Doc. 353. The Court granted it in part and denied it in part on March 31, 2022. *Anthem II*, 2022 WL 1558879, at *14.[7]

Thereafter on May 11, 2022, the parties filed a joint letter providing the Court with a summary of the parties' meet and confer discussions and proposing next steps for proceeding with the case. Doc. 401. The parties indicated that Express Scripts did not intend to proceed on Counts I and IV of its counterclaims unless Anthem prevailed on its future appeal as to its pricing claims.[8] *Id.* at 1. Anthem asked the Court to enter final judgment on the pricing claims under Federal Rule of Civil Procedure 54(b) in order to pursue its appeal. *Id.* at 2–4. Express Scripts, on the other hand, asked the Court to deny Anthem's request for a partial final judgment and to set a briefing schedule for the parties to submit further summary judgment and *Daubert* motions.[9] *Id.* at 5.

---

opposition brief, Mr. Abernathy agreed that the Sentinel Effect analysis might be appropriate only for "*some* categories"—not *all* categories—of Super PA affected claims . . . .") (emphasis in original); *see supra* note 4.

[6] Accordingly, at that point, only Counts I, II, and III of Anthem's claims remained, and only Counts I, III, and VI of Express Scripts' counterclaims remained.

[7] Following the Court's March 2022 opinion, the following claims remain: parts of Count III of Anthem's claims for operational breaches, and Counts I and IV of Express Scripts' counterclaims, namely, its counterclaim for breach of duty to negotiate in good faith and its counterclaim for a declaratory judgment as to the timing of periodic pricing reviews. *See* Doc. 401 at 6.

[8] However, Express Scripts did not subsequently "voluntarily withdraw" those counterclaims as indicated in the summary of the parties' meet and confer discussions. *But see* Doc. 401 at 1.

[9] Express Scripts also proposed that it would dismiss its remaining counterclaims without prejudice to its right to reassert them if Anthem prevails on appeal. *See id.* at 5. However, the record does not reflect that Express Scripts indeed dismissed those counterclaims.

The Court subsequently issued a short order denying Anthem's request for partial final judgment pursuant to Rule 54(b) and setting a briefing schedule for the *Daubert* and summary judgment motions.  Doc. 402 at 1.  The parties filed the motions now before the Court pursuant to that schedule.  *See generally* Doc. 406; Doc. 410; Doc. 429.

## II.    DISCUSSION

Before the Court is Express Scripts' motion for a partial summary judgment; its motion to exclude Anthem's PA experts, and Anthem's motion to file a supplemental expert report.  The Court first addresses Express Scripts' partial motion for summary judgment.

### A.  Summary Judgment Standard

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal citation and quotation marks omitted).  In deciding a motion for summary judgment, the Court must "construe the facts in the light most

favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d

Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir.2004)).

However, in opposing a motion for summary judgment, the non-moving party may not

rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth

Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To prevail, "the non-moving party must

set forth significant, probative evidence on which a reasonable fact-finder could decide in

its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S.

242, 256–57 (1986)).

"[S]ummary judgment should only be granted '[i]f after discovery, the nonmoving

party has failed to make a sufficient showing on an essential element of [its] case with

respect to which [it] has the burden of proof.'" *Hellstrom v. U.S. Dep't of Veterans

Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Berger v. United States*, 87 F.3d 60, 65

(2d Cir. 1996)).

**B. Express Scripts' Motion for Partial Summary Judgment**

Express Scripts moves for summary judgment on Count III of the complaint in

regard to Section 3.7 of the parties' agreement, and it sets forth two main arguments:

*first*, Anthem did not plead a breach of Section 3.7 of the agreement, Doc. 407 at 7–9, and

*second*, there is no evidence to support any claimed breach of Section 3.7, Doc. 407 at 9–

10. In response, Anthem argues that it adequately plead Count III under Section 3.7(g),

Doc. 443 at 24–29, and there is ample evidence of breach, Doc. 443 at 29–30.

As a preliminary matter, Anthem has sufficiently pleaded a breach of Section 3.7

of the agreement in regard to Express Scripts' failure to remedy the Super PA issue.

Indeed, in Count III, the complaint alleges that Express Scripts breached the agreement

by, "among other things," failing to "timely correct the Super PA defects in its claims

processing system and reimburse Anthem for claims incorrectly approved by ESI . . . ."

Doc. 3 ¶ 105; *see also id.* ¶¶ 101–107; *Anthem II*, 2022 WL 1558879, at *13.

To successfully plead this breach of contract theory, Anthem was not required to cite to every section of the agreement under which it might possibly seek and obtain relief for this alleged breach.  *See Digilytic Int'l FZE V. Alchemy Fin., Inc.*, No. 20 Civ. 4650 (ER), 2022 WL 912965, at *7 (S.D.N.Y. Mar. 29, 2022) (concluding that, although the allegations did not specifically quote "the particular contract provisions at issue," they gave the Court and the defendants sufficient notice of the transactions and occurrences intended to be proved) (citation omitted).  That is because "Rule 8 pleading is extremely permissive."[10]  *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004).  It only requires that a plaintiff include a short and plain statement of the claim (1) showing that the pleader is entitled to relief and (2) giving the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Id.*; *see also Anthem II*, 2022 WL 1558879, at *13.  The record in this case makes clear that both of those requirements were met.  Accordingly, Express Scripts' "pleading failure" argument is unavailing.[11]  Doc. 407 at 8.

The Court finds that Express Scripts is entitled to summary judgment as to Anthem's Super PA breach allegations pursuant to Section 3.7(g) of the parties' agreement.  No reasonable factfinder could conclude that Express Scripts' breached Section 3.7 of the parties' agreement as Anthem alleges.

---

[10] That the complaint "specifies multiple other contract provisions it claims were breached with respect to PA requests and Super PA, such as Sections 3.1 and 3.11" does not render the complaint insufficient as to Anthem's claims under Section 3.7.  Doc. 407 at 8; *see also* Doc. 443 at 8 ("[A] complaint does not have to cite specific contract provisions[]"); *id.* at 24; *see, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO V. Tightseal Constr., Inc.*, No. 17 Civ. 3670 (KPF), 2018 WL 3910827, at *10 (S.D.N.Y. Aug. 14, 2018) (noting that federal pleading requirements do not require parties to specify "which provisions of the agreements were actually breached").

[11] Notably, Anthem points to various record documents showing that Express Scripts knew that a breach claim as to Section 3.7 might be forthcoming in light of claims that it incorrectly paid due to the Super PA issue.  Doc. 443 at 17 (citing various internal documents wherein Express Scripts noted that Section 3.7 might trigger its duty to credit Anthem for "claims paid by PA that should have been declined"); *see also* Doc. 426-3 at 4.

The text of Section 3.7(g) makes clear that it does not apply to payments issued to Network Pharmacies[12] pursuant to Express Scripts' software malfunction, which *cannot be recovered from those pharmacies*.  Doc. 443 at 7, 21; *see also* Doc. 3 ¶¶ 78, 79, 105.  That is because the section specifies that it applies to overpayments or incorrect payments made to Network Pharmacies that have *been recovered*.  Doc. 381-2 at 38–39 § 3.7(g) (noting that Express Scripts must credit Anthem for recovered overpayments or incorrect payments paid, but not covered, under the terms of the Coverage Document); *Anthem II*, 2022 WL 1558879, at *13 ("However, the plain language of this Section clearly requires it to credit back to Anthem 100% of *recovered overpayments*.") (emphasis added).  Several aspects of Section 3.7(g) make that much clear.  First, as Express Scripts points out, the sentences of Section 3.7(g) "work together in unison."  Doc. 437 at 10–12.  Accordingly, where the section indicates that Express Scripts "shall . . . recover the overpayment or incorrect payment and credit [Anthem] *accordingly*," Express Scripts' obligations to credit Anthem are made *conditional* upon recovery, and are left open to specification in the following sentences.  Doc. 381-2 at 39 § 3.7(g) (emphasis added).  Indeed, immediately following that sentence, Section 3.7(g) specifies other ways in which Express Scripts might come to identify any erroneous overpayments.  *Id.*  The section thereafter clarifies that *only* recovered overpayments—albeit one hundred percent of those recovered overpayments—shall be credited back to Anthem.  *Id.*

Here, the payments made pursuant to the faulty Super PA system are not recoverable and have not been recovered.  Anthem concedes that the payments *cannot* be recovered from the parties they were issued to, here, the Network Pharmacies.  Doc. 443 at 21 ("Express Scripts has no ability to recover from a pharmacy for an incorrect

---

[12] The agreement states that "Network Pharmacy" means "a Pharmacy (including [Express Scripts'] mail order Pharmacy and Specialty Pharmacies) that has:  (a) met the credentialing and re-credentialing standards of [Express Scripts] and the applicable requirements of Law; (b) contracted as an independent contractor directly with [Express Scripts] or is operated by [Express Scripts] or one of its Affiliates; and (c) agreed to accept discounted rates or fees as payment in full for Covered Prescriptions provided to Covered Individuals, subject to applicable Cost Share."  Doc. 381-2 at 11 § 1.59.

payment because the pharmacy is not at fault."); *see also* Doc. 437 at 11–12.  As Anthem itself notes, "when Express Scripts approved ineligible claims based on the Super PA, the pharmacy dispensed drugs *exactly as instructed*."  Doc. 443 at 21 (emphasis added); *see generally Citibank, N.A. v. Brigade Cap. Mgmt., LP*, 49 F.4th 42, 58–59 (2d Cir. 2022) (noting that only payments made mistakenly, "to one who is *not entitled thereto*," may be recovered) (citation omitted and emphasis added).  This point is critical.  Indeed, it distinguishes Anthem's Super PA arguments—which target the *combination* of erroneous approvals made due to Express Scripts' software issue and the corresponding payments— from pure "mistaken" payments made to pharmacies not entitled to those payments, which could actually be legally "recovered."  *Citibank, N.A.*, 49 F.4th at 58; *see also* Doc. 381-2 at 38–39 § 3.7(g) ("If [Express Scripts] determines that, through its error, it has overpaid any Network Pharmacy or paid benefits not covered under the terms of a Coverage Document, [Express Scripts] shall, at its own expense, recover the overpayment or incorrect payment and credit [Anthem] accordingly.").

There is no evidence that Express Scripts failed to credit Anthem for the types of errors covered by Section 3.7(g):  *recovered* overpayments or incorrect payments.  Doc. 381-2 at 39 § 3.7(g); Doc. 437 at 11.  Despite its conclusion that Express Scripts *could not* recover payments made to Network Pharmacies due to the Super PA issue, Anthem nevertheless insists that Section 3.7(g) applies to the Super PA issue because Express Scripts "*received payment from Anthem*[] for the claims incorrectly paid."  Doc. 443 at 20 (emphasis added).  But as Express Scripts emphasizes, "Section 3.7(g) is about *recovering* payments, not *receiving* payments."  Doc. 437 at 11.  Accordingly, the record does not contain any evidence supporting Anthem's Super PA theory of breach pursuant to Section 3.7.  Importantly, Anthem's reading of the PBM would mean that "Express Scripts would not have to try to get overpayments back from Network Pharmacies as it could simply 'recover' all overpayments by billing Anthem."  *Id.* at 12.  As Express Scripts emphasizes, "[t]his is plainly not the correct reading of Section 3.7(g)."  *Id.* at 12.

To be sure, the record contains various documents indicating that Express Scripts may have breached the parties' agreement through the failures of its Super PA system, thus entitling Anthem to damages.  However, Section 3.7 is not the proper vehicle for relief pursuant to that claim given the parties' consensus that the funds at issue are not recoverable from Network Pharmacies, as the section contemplates.  *See* Doc. 381-2 at 39 § 3.7(g).  The Court's conclusion as to Section 3.7(g) does not in any way foreclose Anthem's capacity to recover from Express Scripts the damages corresponding with the Super PA errors as violations of other portions of the parties' agreement.[13]

### C. Express Scripts' Motion to Exclude Expert Testimony and Anthem's Motion for Leave to Submit Supplemental Expert Report

Express Scripts also moves to exclude Anthem's six experts from offering their opinions and damages models for PA requests.[14]  Doc. 410.  It argues that the "proposed testimony Anthem has offered from its six experts on the remaining PA issues is so methodologically unsound, error-ridden, and disconnected from the applicable contractual provisions that the Court should exclude it."  Doc. 411 at 6.  Express Scripts emphasizes  that Anthem's experts offered opinions that are inconsistent with the Court's March 2022 Opinion and Order.  *Id.*; *see generally Anthem II*, 2022 WL 1558879.

In response, Anthem concedes that the testimony of several of its expert witnesses is no longer admissible following the Court's March 2022 decision.  Doc. 445 at 7, 13 n.4, 10; *see also Anthem II*, 2022 WL 1558879, at *13.  It nevertheless contests the exclusion of the testimony of Matthews regarding Super PA damages, and, specifically, its reliance on Abarca's findings as to the Sentinel Effect.  Doc. 445 at 6, 12–15; *see*

---

[13] Although the Court's March 2022 opinion determined that Anthem's general PA breach allegations did not fall under Sections 3.1 and 3.11 of the agreement, *see Anthem II*, 2022 WL 1558879, at *13, nothing in that opinion prevents Anthem from pursuing its Super PA breach allegations pursuant to those sections.

[14] Express Scripts specifically requests that the Court preclude:  (1) Jacob Abarca, Andrea Foulkes, Michael Lonergan, Amy Matthews, Brian McCormick, and Arthur Shinn from testifying about the General and High Cost Drug Audits; (2) Dr. Foulkes and Dr. Shinn from testifying about any extrapolated error rate or damages based on Anthem's General Audit; (3) Mr. Abarca, Dr. Foulkes, Ms. Matthews, and Dr. Shinn from offering any opinions based on the analysis in Section B(2) of Mr. Abarca's expert disclosure; and (4) Dr. Shinn from offering a legal opinion about Section 8.2 of the PBM Agreement.  Doc. 410 at 1.

*supra* note 4.  Anthem further requests leave to file a supplemental expert report, Doc.

445 at 15–22, which Express Scripts opposes, Doc. 439.

> ### i.  Exclusion of Expert Testimony

The Court first addresses Express Scripts' motion to exclude Anthem's testimony.

It moves to exclude the testimony of all six of Anthem's expert witnesses on the

remaining PA issues, including Super PA.  Doc. 412 at 6.  For the reasons set forth below,

the Court grants the motion in full as to four of Anthem's experts, Foulkes, Lonergan,

McCormick, and Shinn, and grants it in part and denies it in part as to two others,

Matthews and Abarca.  *See* Doc. 445 at 6, 15; *see generally* Doc. 412; Doc. 438.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert

testimony.  Pursuant to the Rule:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will
> help the trier of fact to understand the evidence or to determine a fact in
> issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts
> of the case.

Fed. R. Evid. 702.  The party offering the testimony has the burden of establishing its

admissibility by a preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S.

171, 175–76 (1987).

"As the Supreme Court explained in *Daubert*, Rule 702 requires the district court

to ensure that 'any and all [expert] testimony or evidence admitted is not only relevant,

but reliable.'"  *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005)

(citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).  In

considering relevance, courts must evaluate whether the expert testimony would assist the

factfinder in the process of understanding the evidence or determining a fact at issue.  *See*

*Daubert*, 509 U.S. at 591.  "The consideration has been aptly described . . . as one of fit," meaning that the Court must determine whether the expert testimony sufficiently and adequately corresponds with the facts of the case.  *Id.* (internal quotation marks and citation omitted).  Additionally, courts may consider the following non-exhaustive list of factors to determine whether evidence is sufficiently reliable:  (1) whether a theory or technique had been and could be tested, (2) whether it had been subjected to peer review, (3) what its error rate was, and (4) whether scientific standards existed to govern the theory or technique's application or operation.  *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005).  "[T]he trial judge's gatekeeping obligation applies not only to testimony based on 'scientific' knowledge, as in *Daubert*, but also to testimony based on 'technical' or 'other specialized' knowledge."  *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004).

Applying these standards, the Court grants Express Scripts' motion as to Foulkes, Lonergan, McCormick, and Shinn, and in part as to experts Matthews and Abarca.  *See* Doc. 445 at 13 n.4; Doc. 412 at 11.  Critically, the parties agree that each of these experts provided opinions regarding PA requests, specifically with respect to damages for Anthem's audit claim, that are inconsistent with the Court's March 2022 Opinion.  *See Anthem II*, 2022 WL 1558879, at *13; *see also* Doc. 412 at 6, 11–13, 15–23, 27–28; Doc. 445 at 6–7, 13 n.4.  Indeed, in the March 2022 Opinion, the Court determined that Express Scripts performance guarantees, contained within the agreement's performance charts, set out "the standards of performance Express Scripts is contractually obligated to meet with respect to the different types of prior authorizations."  *Anthem II*, 2022 WL 1558879, at *13; *supra* note 1; *see also* Doc 359-1 at 136, 184.  All six of Anthem's experts, however, provided opinions based on *different* performance standards in regard to Anthem's audit claim.  *See* Doc. 412 at 19; Doc. 445 at 13 n.4.  Because those opinions are inconsistent with the Court's March 2022 Opinion, such testimony must be excluded.

The Court, however, denies the motion in part as to the related opinions of Matthews and Abarca regarding Super PA damages and the Sentinel Effect as follows: *first*, Matthews may provide testimony regarding "the methodology and results of Anthem's calculation of damages resulting from [Express Scripts'] Super PA System Defect." Doc. 445 at 12–13 (quoting Doc. 381-148 at 2–3). *Second*, Anthem may also provide testimony regarding Super PA damages which relies on the Sentinel Effect. *Id.* at 14–15; *see supra* note 4.

As a preliminary matter, unlike the testimony discussed above, these expert opinions were not foreclosed by the Court's March 2022 Opinion. *See generally Anthem II*, 2022 WL 1558879. Indeed, the Court's March 2022 opinion did not address Anthem's Super PA allegations because Express Scripts did not seek summary judgment on that issue. *See supra* note 2. Nor did the Court's March 2022 Opinion address the Sentinel Effect. Additionally, for the reasons laid out below, the Court concludes that the opinions are otherwise admissible because they are relevant and sufficiently reliable. Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 591.

Matthews provided expert opinions regarding Anthem's calculation of damages resulting from the Super PA issue. Doc. 445 at 12–13; *see* Doc. 381-148. Pursuant to her calculations, Matthews calculated damages amounting to $60,996,026. Doc. 381-148 at 11. That number included five "[five] 'buckets' of claims affected by the Super PA System Defect," including "Global," "Administrative," "Quality," "Migrated," and "Multiple Rejects," which Matthews divided into two groups.[15] *Id.* at 7. "With respect to

---

[15] "Group 1," consists of Global, Administrative, and Migrated claims. Doc. 381-148 at 7. "Group 2," consists of Quality and Multiple Rejects claims. *Id.* The various "buckets" contain claims that were erroneously approved for different reasons. *Id.* n.10. According to Express Scripts, "'Global' is the category wherein an approved PA for a certain medication for a certain patient was applied to all medications for the same patient;" "'Administrative' is the category wherein PA claims initially rejected for an administrative reason would ultimately issue an approval without sending the PA through the entire adjudication process;" "'Quality' is the category wherein an unintended PA criteria was applied without the application of other requirements[;]" "'Migrated' is the category wherein PAs approved from a legacy system were migrated to a new system that automatically issued subsequent PAs without full review;" and

each group, Ms. Matthews arrived at a 'but for' result – that is, how much would Anthem have had to pay on all of the claims in the group if the [Super PA] System Defect had not existed." *Id.* at 8. "With an adjustment for refills, . . . the difference between:  (the aggregate cost of the drugs approved during the Defect period) *and* (the drugs that would properly have been approved and paid for even in the absence of the System Defect), would constitute Anthem's damages." *Id.* (emphasis in original).  Matthews applied the Sentinel Effect analysis to the "buckets" of the Super PA-affected claims in Group 1, namely, Global, Administrative, and Migrated claims.  Doc. 361-15 at 8–9.

Express Scripts seeks to exclude Matthews' Super PA damages analysis insofar as it applies the Sentinel Effect to the Migrated "bucket."  Doc. 412 at 27; Doc. 438 at 5–7. It specifically contends that "Anthem offers no other support for the admissibility of the testimony" other than the "purported admission" by one of Express Scripts' experts, Mr. Abernathy, that the Sentinel Effect analysis was appropriately applied to the Super PA damages calculations.  Doc. 438 at 6–7; *see supra* note 5.  Express Scripts further underscores its contention that the application of the Sentinel Effect to the Quality, Migrated, and Multiple Rejects claims "buckets" is inappropriate as it would include "the wrong universe of patients."[16]  Doc. 438 at 6–7.

At this stage, however, the Court declines to exclude Matthews' Super PA damages testimony, including the calculations that incorporated the Sentinel Effect analysis within Group 1 of the claims "buckets."  *See* Doc. 381-148 at 8–9; *see supra* note 15.  Indeed, the Court's "role is to act as a gatekeeper, and permit evidence that uses accepted statistical methods properly applied to the facts of the case."  *Port Auth. Police Asian Jade Soc. of N.Y. & N.J. Inc. v. Port. Auth. Of N.Y. & N.J.*, 681 F. Supp. 2d 456,

---

"'Multiple Rejects' is the category wherein PA requests required two types of reviews but only one was completed."  Doc. 438 at 5 n.3 (citing Doc. 433-2 ¶ 126); *see also* Doc. 381-148 at 7 n.10.

[16] The Court emphasizes that Matthews' analysis did not apply the Sentinel Effect to Quality or Multiple Rejects claims.  Doc. 438 at 6–7; Doc. 381-148 at 8–10.

466–67 (S.D.N.Y. 2010), *aff'd in part and vacated in part, Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012). "It is the jury's role to decide between competing conclusions based on the data and analysis." *Id.* at 467.

Here, while Express Scripts correctly notes that its rebuttal expert Abernathy did not wholesale endorse the application of the Sentinel Effect within all "buckets" of claims affected by the Super PA issue—and indeed, concluded that the Sentinel Effect analysis should *not* have been used "when opining about damages for the Migrated category"—the Court finds that all of Matthews' Super PA damages calculations are sufficiently relevant and reliable to be presented to a jury. Doc. 381-148 at 7; Doc. 361-15 at 8–9; *see also* Doc. 438 at 6–7. Indeed, the record makes clear that Matthews' calculations are supported by available facts, and are based upon reliable principles and methods. *See* Fed. R. Evid. 702; *see generally* Doc. 381-148; Doc. 361-9. The nature of the Super PA issue, the source of the data for the calculations, and the methodologies underlying calculations are each independently outlined and described in the disclosure materials for Matthews. Doc. 381-148 at 6–11. The disclosure materials for Abarca similarly contain a detailed recitation regarding the sources of the data employed and the methods used to calculate results pertaining to the Sentinel Effect, and they provide step-by-step analyses for the results.[17] Doc. 361-9 at 2–10. That Express Scripts' expert contends that the Sentinel Effect analysis considers "the wrong universe of patients," Doc. 438 at 7, in light of "Anthem's theory in this case," Doc. 412 at 14, does not render the testimony inadmissible under Rule 702. Fed. R. Evid. 702.

---

[17] Express Scripts observes that Abarca "based his Sentinel Effect analysis on patients whose prescription claims were initially rejected at the point of sale . . ., not those who submitted a PA request that was denied," despite its contention that "Anthem's theory in this case is not that patients would have walked away or accepted an alternative drug" at the point of sale." Doc. 412 at 14. It emphasizes that, "[w]hen pressed at deposition about this mismatch," Abarca stated that he conducted his analysis in this way "because 'it was the 'analysis that I've done . . . for years and years.'" *Id.* (citing Ex. 4 at 35:18–23; 38:22–23). While this may very well affect a factfinder's view as to expert conclusions stemming from the application of the Sentinel Effect, this does not render the testimony irrelevant or unreliable under Rule 702. *See Port Auth.*, 681 F. Supp. 2d at 467.

Critically, the dispute between the parties comes down to a disagreement about the use of the Sentinel Effect in regard to only one of the five category "buckets," namely, Migrated claims.  Doc. 438 at 6–7 (stating that Abernathy opined that the Sentinel Effect would be inappropriately applied to Migrated, Multiple Rejects, and Quality categories, but also noting that "Matthews does not rely on the Sentinel Effect for her damages opinions for Multiple Rejects and Quality categories of Super PA affected claims . . . .").  And, as Anthem notes, that dispute is not about technical methods or their application, *see* Fed. R. Evid. 702, but rather about competing conclusions based on the data and corresponding analysis, Doc. 445 at 14; *see also* Doc. 412 at 14.  The record thus shows that the Super PA testimony at issue here, including Matthews' calculations that rely on the Sentinel Effect, meets the admissibility requirements of Rule 702.  It is sufficiently relevant and reliable.  *See* Fed. R. Evid. 702.  For those reasons, the Court declines to exclude it at this stage.

### ii.  Request for Leave to File Supplemental Expert Report

In light of the Court's March 2022 Opinion, and its foreclosure of the testimony of various experts as described above, *see supra* Section II(C)(i), Anthem requests leave to file a supplemental expert report regarding damages, specifically to "factor in the 98% performance guarantees" and provide a "focused and limited" analysis explaining Anthem's departure from Express Scripts' damages calculations provided by Abernathy.  Doc. 445 at 6–8, 15–22.  Express Scripts opposes this request.  Doc. 439.  It argues that Anthem has provided insufficient justification for "serving a new untimely expert report," the importance of the evidence sought to be introduced is slight, it would be prejudiced, and a continuance is not appropriate here.  *Id.* at 10–20.  The Court grants Anthem's request for the reasons stated below.

Rule 26 requires that expert reports contain "a *complete* statement of *all opinions* the witness will express and the basis and reasons for them."  Fed. Civ. P. 26(a)(2)(B) (emphasis added).  It also requires that reports include information about the

considered facts, the exhibits reviewed, and the witness' qualifications, among other information.  *Id.*  Pursuant to Rule 26(e)(1)(A), a party must provide a supplement to an initial disclosure where "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the parties during the discovery process or in writing." Such a supplement must be provided "in a timely manner."  Fed. R. Civ. P. 26(e)(1)(A).

Courts in this Circuit have found that a supplemental expert report may be appropriate where, for example, "the expert subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report incomplete or inaccurate."  *Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (W.D.N.Y. 2011).  On the other hand, courts in this Circuit have also noted that Rule 26 "is not . . . a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report."  *Lidle v. Cirrus Design Corp.*, No. 8 Civ. 1253 (BSJ), 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009).  And Rule 26 does not permit "the disclosing party to offer a new theory out of time when the responding party has demonstrated that the disclosing party's initial theory is incorrect."  *Bozick v. Conagra Foods, Inc.*, No. 19 Civ. 4045 (LJL), 2021 WL 1198320, at *3 (S.D.N.Y. Mar. 30, 2021).  Such conduct would render the completeness requirements of Rule 26(a)(2)(B) meaningless.

Under Rule 37(c)(1), a court may sanction a party that "fails to provide information . . . as required by Rule 26(a) or (e)."  Fed. R. Civ. P. 37(c)(1).  "A district court has wide discretion" to impose sanctions under Federal Rule of Civil Procedure 37.  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006).  Such sanctions include, among other things, the preclusion of evidence.  *See id.* at 296.

The parties agree that the Court must consider four factors in its assessment of whether to allow Anthem's proposed supplemental report, namely:  (1) Anthem's justification for its late disclosure; (2) the importance of the evidence sought to be

precluded; (3) the prejudice suffered by Express Scripts as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.  *Id.*; *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 961–63 (2d Cir. 1996); *see also* Doc. 448 at 8.

Here, the Court grants Anthem leave to allow Foulkes to submit a narrowly-tailored supplemental expert report.  While it is true that expert discovery was lengthy and this case has been pending for a long period of time, the timeliness of Anthem's instant request is viewed in a distinct light given the Court's March 2022 Opinion.  *See* Doc. 439 at 7–8.  Indeed, the request was made approximately one month after the Court issued the Opinion, which foreclosed Anthem's prior damages theories.  Doc. 448 at 7 n.2.  At that point, Anthem made clear that it intended to seek permission to "file supplemental expert reports on the operational breach claims" due to a change in circumstances that rendered its prior testimony "incomplete or incorrect," namely, the Court's dispositive conclusions regarding performance guarantees.  Doc. 401 at 4 ("As we told ESI during the parties' meet and confer discussions, Anthem intends to seek permission to file supplemental expert reports on the operational breach claims to comport with the Opinion."); Fed. R. Civ. P. 26(e)(1)(A).  Express Scripts made clear that it had notice of Anthem's intended request as early as May 2022.  Doc. 401 at 7.  The Court emphasizes that the request was made due to the Court's conclusions of law as to the contract at issue in this case, not because of an initial careless deficiency or a situation wherein the "responding party has demonstrated that the disclosing party's initial theory is incorrect."  *Bozick*, 2021 WL 1198320, at *3; *see also Lidle*, 2009 WL 4907201, at *5; *Compare Valassis Communs., Inc. v. News Corp*, No. 17 Civ. 7378 (PKC), 2020 WL 1982963, at *1–2 (S.D.N.Y. Apr. 24, 2020) *with Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Group) Inc.*, No. 18 Civ. 10758 (ER), 2022 WL 17156550, at *15–16.

Additionally, the proposed evidence is clearly important to Anthem's case.  *See Variblend*, 2022 WL 17156550, at *15 (noting that the issue before the Court "is not

whether the evidence is subjectively important to the party that seeks its inclusion, but rather the degree to which it is necessary to prove a claim") (citation omitted).  Indeed, Anthem's supplement will provide a window into the $50 million difference between the parties' damages calculations following the Court's March 2022 Opinion.  Doc. 448 at 11.

Although it is a close call, the Court concludes that the final two factors also weigh in favor of permitting Anthem to file the supplemental report.  *Davis*, 469 F.3d at 296.  In regard to prejudice that Express Scripts will suffer, the Court disagrees with Anthem's contention that "[a]llowing the proposed supplemental expert testimony does not prejudice Express Scripts" at all.  Doc. 445 at 21.  However, considering the narrow nature of the proposed supplemental report and the circumstances of this case following the Court's March 2022 Opinion, the prejudice that Express Scripts will suffer here is not as significant as it contends.  Doc. 439 at 15–18; *see also* Doc. 445 at 21; Doc. 448 at 10 n.3 (emphasizing the "limited expert testimony sought here").

Finally, no trial date has been set in this case, and a limited continuance is possible.  To be sure, as Express Scripts correctly notes, the "duration and complexity" of this case are significant.  Doc. 439 at 19.  This case has now been pending for nearly seven years.  *See* Doc. 3.  But the lengthy and complex nature of this case does not supersede the substance of the intervening circumstances, including the Court's March 2022 Opinion, and the preference for adjudications on the merits.  Indeed, "excluding expert testimony is a 'drastic remedy' . . . and should be used sparingly, 'even when there has not been strict compliance with Rule 26,' because exclusion 'may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.'"  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 398–99 (S.D.N.Y. 2015), *aff'd sub nom. Congregation Rabbinical Coll. Of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019).

The Court emphasizes the narrow nature of this decision.  Anthem's supplement may only address the ways in which its damages conclusions would depart from Express

Scripts' expert's, Abernathy, in light of Anthem's assertion that its expert now "agrees with Mr. Abernathy's assumptions and methodology for calculating damages taking into account the PGs, with one exception."  Doc. 445 at 16 (noting that Abernathy applies the upper boundary of the confidence interval where Foulkes would apply a "point estimate"); Doc. 448 at 5; *see generally* Doc. 439 at 15 (suggesting that Anthem "could simply use Mr. Abernathy's own damages calculation (but without alteration)").

## III.    CONCLUSION

For all the reasons stated herein, Express Scripts' partial motion for summary judgment regarding Section 3.7 of the parties' agreement is GRANTED.  Express Scripts' motion to preclude expert testimony is GRANTED in part and DENIED in part, and Anthem's motion for leave to file a supplemental expert report is GRANTED.

The parties are directed to appear for a telephonic status conference at 2:00 PM on March 23, 2023.  The parties are directed to dial (877) 411-9748 and enter access code 3029857#.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 406, 410, 429.

It is SO ORDERED.

Dated:    March 8, 2023
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.